[Civ. No. 27033. Second Dist., Div. One. Oct. 23, 1963.]

BOYS TOWN USA, INC., et al., Plaintiffs and Appellants, v. THE WORLD CHURCH, et al., Defendants and Respondents.

Jerome Weber, Lawrence B. Chapman, Athearn, Chandler & Hoffman and Theodore P. Lambros for Plaintiffs and Appellants.

Willedd Andrews, Walker, Wright, Tyler & Ward and Oliver S. Northcote for Defendants and Respondents.

FOURT, J.—This is an appeal by plaintiffs [i.e. purchasers] from a judgment of dismissal in an action wherein plaintiffs sought specific performance of and damages with reference to a sales agreement for the purchase of real property.

The pertinent facts will be set forth under the various contentions. ■ The first issue is whether the contract for the sale and purchase of the subject real property is specifically enforceable. The trial court indicated in its statements from the bench that, among others, one of the grounds for sustaining defendant's motion to dismiss was that the contract in question lacked mutuality of remedy. The contract provides in pertinent part as follows:

"The Seller [i.e. defendants] shall receive Forty per cent (40%) of all net proceeds from the sale of all stock placed in escrow, but the distribution of these net proceeds will not begin until Sixty (60) days from the date of this Contract or Purchase Agreement. The Seller will allow Purchaser [i.e. plaintiffs] to distribute One Hundred per cent (100%) of the net proceeds within the first Sixty (60) days, as the Purchaser sees fit, but the Purchaser shall be responsible to deliver Forty per cent (40%) of all net proceeds to the Seller as accumulated within the first Sixty (60) days as hereinabove stated and on the terms as hereinafter described until all of the obligations to the Seller and the mortgagees and beneficiaries of the Trust Deeds are retired, unless M. S. CLARK ENTERPRISES, INC., an Ohio corporation, and Fenton Sitton, also known as F. A. SITTON & COMPANY, have been paid in full; in which event, all of the proceeds from the sale of the stock shall be paid to Seller, except Ten per cent (10%) which is to be paid to Ranch Engineering Co., a California corporation.

"If, however, the Forty per cent (40%) is not sufficient to make the payment of Three Hundred Thousand Dollars ($300,000.00) per year to Seller, the Purchaser shall pay the difference between the Forty per cent (40%), and the said sum of Three Hundred Thousand Dollars ($300,000.00) per year.

"The terms of the Agreement and the payments thereon shall not depend upon, or be subject to any sale of stock by either BOYS TOWN, U.S.A., INC., a Nevada corporation, or

SUNSET DEVELOPMENT COMPANY, a Nevada corporation.

"To secure performance of this Purchase Agreement and its terms for payment, the shareholders, a list of which is attached hereto and made a part hereof, will place One Million Eight Hundred Thousand (1,800,000) Shares of the SUNSET DEVELOPMENT COMPANY, a Nevada corporation, in escrow, and will authorize the sale of these shares to guarantee the terms of this Purchase Agreement and to fulfill the requirements of the escrow effectuating this Purchase Agreement. In the independent escrow mentioned, one of the terms will be the payment to M. S. CLARK ENTERPRISES, INC., an Ohio corporation, according to the Assumption and Purchase Agreement executed by and between BOYS TOWN, U.S.A., INC., a Nevada corporation, and M. S. CLARK ENTERPRISES, INC., an Ohio corporation, marked Exhibit B, attached hereto and made a part of this AGREEMENT by reference; and according to the Assumption Agreement by and between BOYS TOWN, U.S.A. INC., a Nevada corporation, and Fenton Sitton, also known as F. A. SITTON COMPANY, hereto attached and marked Exhibit C, and made a part of this AGREEMENT by reference.

"It is the understanding running with this AGREEMENT that the payments due to THE WORLD CHURCH, a non-profit corporation, will be made by the Purchaser, as follows:

"Forty per cent (40%) of the net proceeds derived from the sale of the above-mentioned stock will be paid to THE WORLD CHURCH, a non-profit California corporation, until the payments due THE WORLD CHURCH, a non-profit California corporation, are paid in full.

"Forty per cent (40%) of the net proceeds derived from the sale of the above-mentioned stock will be allocated to M. S. CLARK ENTERPRISES, INC., an Ohio corporation.

"Ten per cent (10%) of the net proceeds derived from the sale of said above-mentioned stock will be paid to Fenton Sitton, also known as F. A. SITTON & COMPANY.

"Ten per cent (10%) of the net proceeds derived from the sale of the said above mentioned stock shall be retained by Ranch Engineering Co., a California corporation.

"This schedule of payments shall continue until THE WORLD CHURCH, a non-profit California corporation, is paid in full."

The trial judge further stated:

"Entirely aside from the question of illegality, the provi-

sions in the agreement for the deposit of stock by the stockholders — who were supposed to be named, but weren't — is an integral part of this agreement, and it is security for the purchase price, something that the purchaser [sic] was entitled to have here. I think it comes within these cases where the Court simply wouldn't supervise it, and furthermore, couldn't. On one aspect of the agreement, the stockholders were the ones that were supposed to put it up, and what if they didn't? How could the World Church insist upon it and how could the Court insist upon it? They weren't even parties to the agreement: there would be no way of compelling them under that to put up the stock. And yet, certainly, this was an integral part of the agreement from the standpoint of at least security, if not the sole method of payment. Because while the agreement says that this agreement shall not be dependent upon sales of stock by Boys Town or Sunset Development Company, it doesn't say it isn't dependent upon sales of stock by these purchasers, by these stockholders.

"This may involve a construction of the contract, as to what was meant there, but I can't see how, under any possibility, the Court would say that the plaintiffs could have specific performance of a contract when it involved all of these details which had to be performed either by a third party, not even a party to the contract, or by Sunset Development Company itself. Under the facts shown by the affidavits and all of those declarations and under a situation where a further permit, at least, would have to be obtained from the Commissioner of Corporations, that in itself would come within the type of thing, under the cases cited by Mr. Wiseman, that the Court would not supervise, and therefore there is this lack of mutuality." Appellants criticize the doctrine of mutuality of remedy, however the requirement of mutuality of remedy has been given statutory recognition in this state (Civ. Code, § 3386) since 1872. ■ What is stated in *Sesma* v. *Ellis*, 38 Cal.App.2d 139, at pages 143-144 [100 P.2d 816], is pertinent to the case at bar: "A further consideration is that there was no mutuality of remedy with respect to the claimed contract, in the absence of which a contract may not be specifically enforced. The contract, as contended for, called for the doing of things by third parties which they could not be required to do, and it clearly appears that specific performance on the part of the appellants could not have been enforced by the respondents had such relief been sought. Under such circumstances, the court was justified in

refusing the relief asked for by the appellants."

The next issue is whether the trial court abused its discretion when it dismissed the within action because of plaintiffs' failure diligently to prosecute under the Code of Civil Procedure, section 583.[1]

The discretion to dismiss is that of the trial court and it will be disturbed only in the case of manifest abuse (*Abner Corporation, Inc.* v. *Lushing,* 212 Cal.App.2d 597 [28 Cal.Rptr. 207].)

The trial judge said from the bench: "I am also of the opinion, in view of the whole file, that there has been an unreasonable delay in prosecuting this action. Under all the circumstances, I think the defendants' motion to dismiss the action should be, and it is, granted."

An examination of the whole record negatives any conclusion that there was any abuse of discretion upon the part of the trial court. In defendants' declaration in support of the motion to dismiss the complaint it is asserted in substance that the within action has been pending since March 28, 1960; that it was reset for pretrial for July 19, 1962, and for trial October 8, 1962; that the time to trial from the filing date would be over two and one-half years; that it has been set and reset for pre-trial as follows: In 1960, October 3 and 23; in 1961, May 8, June 9, July 12, July 28 and September 21; and in 1962, March 21, June 28, July 19; that practically all of the settings were initiated by the defendants and not the plaintiffs and no motion to set had been made by the plaintiffs since June of 1961.

Under the circumstances no useful purpose would be served in discussing appellants' further point that the trial court erred in not permitting appellants to amend their complaint to assert a cause of action for damages.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied November 19, 1963, and appellants' petition for a hearing by the Supreme Court was denied December 18, 1963.

---

[1]Code of Civil Procedure, section 583, provides in pertinent part as follows: "The court may in its discretion dismiss any action for want of prosecution on motion of the defendant and after due notice to the plaintiff, whenever plaintiff has failed for two years after action is filed to bring such action to trial. . . ."